1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MCDANIEL, | Case No. 1:20-cv-00856-NONE-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| RALPH DIAZ, et al., | (ECF No. 40) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.**

**INTRODUCTION**

David McDaniel ("Plaintiff" or "McDaniel") filed this civil rights action pursuant to 42 U.S.C. § 1983, bringing both federal and California state causes of action. (ECF No. 1.) Currently before the Court is a motion to dismiss filed by Defendants Rhona Delacruz, Joseph Guerrero, Tania Brown, Brandy Smith, Elijah Pruitt, and Nichelle Harrington, which was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 40.) The Court found this matter suitable for decision without a hearing and vacated the hearing previously scheduled for January 13, 2021. (ECF No. 54.) Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following findings and recommendations recommending that the motion to dismiss be granted in part and denied in part.

## II.

## BACKGROUND

### A.    Factual Allegations Contained in the Operative Complaint

Plaintiff's claims stem from allegations that he was supposed to be released from imprisonment on December 13, 2019, however, Plaintiff was instead held in custody until January 7, 2020, despite the protests by Plaintiff and his counsel.  (Second Amended Complaint ("SAC") ¶ 4-5, ECF No. 31.)[1]

Plaintiff was initially arrested in connection with Stanislaus County Superior Court case number 1480530 on October 31, 2014.  (SAC ¶ 20.)  On February 16, 2016, Plaintiff was charged by information in Stanislaus County Superior Court case number 1480530 with ten counts alleging robberies in violation of California Penal Code § 211, along with special allegations that Plaintiff had suffered several prior convictions for serious felonies within the meaning of California Penal Code §§ 667(d) and 1192.7(c), and two prior convictions that would yield a sentencing enhancement under California Penal Code § 667.5(b).  (SAC ¶ 21.)  The case proceeded to trial by jury, and Plaintiff was convicted of the robberies charged in Counts I, II, III, IV, V, VII, VIII, IX and X, and acquitted on Count VI.  (SAC ¶ 22.)  The state court found in a separate bench trial that Plaintiff had suffered the alleged prior convictions.  (Id.)

On May 16, 2017, the state court sentenced Plaintiff to an indeterminate sentence of 125 years to life in prison and a determinate sentence of 25 years imprisonment.  (SAC ¶ 23.)  Plaintiff was admitted to the California State Prison, Solano, on or around May 30, 2017.  (SAC ¶ 24.)  Plaintiff appealed his conviction, and on October 16, 2019, the Court of Appeal for the State of California, Fifth Appellate District, reversed the conviction.  (SAC ¶ 25.)  The case was remanded to the Stanislaus County Superior Court.  (Id.)  On October 24, 2019, Judge Nancy Ashley of the Stanislaus County Superior Court signed an order under case number 1480530 commanding the California Department of Corrections and Rehabilitation ("CDCR") to deliver Plaintiff into the custody of the Stanislaus County Sheriff, and ordering the Stanislaus County

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Sheriff to take custody of Plaintiff.  (SAC ¶ 26.)  On November 13, 2019, Rhona Delacruz, acting in her capacity as an employee of CDCR, placed a detainer on Plaintiff.  (SAC ¶ 27.)  The CDCR detainer was based on the May 16, 2017 commitment in case 1480530, which had already been reversed by the Court of Appeal for the State of California, Fifth Appellate District.  (SAC ¶ 28.)

On November 21, 2019, Plaintiff was transferred from the custody of CDCR to the custody of the Stanislaus County Sheriff, and he was booked into Stanislaus County Jail.  (SAC ¶ 29.)  On November 21, 2019, CDCR provided its detainer to the Stanislaus County Sheriff's Department ("SCSD"), and an employee of SCSD signed for its receipt.  (SAC ¶ 30.)  On December 13, 2019, Plaintiff appeared again before Judge Nancy Ashley of the Stanislaus County Superior Court.  (SAC ¶ 31.)  At that time, Plaintiff accepted a plea agreement offered by the Stanislaus County District Attorney's Office.  (Id.)  Pursuant to the terms of the plea agreement, Plaintiff pled no contest to Counts I, II, III and IV of the information.  (Id.)  The remaining counts and all enhancements were dismissed.  (Id.)  The Court sentenced Plaintiff to six years imprisonment, calculating that he had earned custody credits totaling 2,518 days, and thus, he already had substantially more than six years' worth of credits.  (SAC ¶ 32.)

When Plaintiff accepted the plea agreement on December 13, 2019, all parties involved – the assistant district attorney, the judge, the defense attorney, and Plaintiff– had a shared understanding that Plaintiff was to be processed and immediately released in connection with case number 1480530.  (SAC ¶ 33.)  The minute order issued by the state court on December 13, 2019, reflects that shared understanding, and according to the minute order, Plaintiff's plea resulted in a "paper commitment" – and thus he had already served his sentence and was entitled to immediate release from custody.  (SAC ¶ 34.)  The minute order also stated that Plaintiff was to be "released on parole" and directed him to report within seven days to the parole office.  (Id.)  On December 16, 2019, the state court filed the abstract of judgment, which confirmed that Judge Ashley intended for Plaintiff to be processed and immediately released upon his December 13, 2019 resentencing.  (SAC ¶ 35.)  The abstract of judgment contained the Court's calculation of Plaintiff's credits – 2518 total days, or substantially more than six years in total.  (Id.)  It also

explicitly ordered that Plaintiff was to be "remanded to the custody of the sheriff forthwith" and "released on Parole ordered to report to Parole w/in 7 days."  (Id.)  The abstract of judgment also provided that the basis for Judge Ashley's order for the sheriff to release Plaintiff on parole immediately was that "per PC 1170(a)(3)[,] [p]reconfinement credits equal or exceed time imposed."  (SAC ¶ 36.)

Despite the fact that the state court concluded Plaintiff had credits for time served that exceeded the prison sentence imposed, and explicitly ordered the sheriff to release Plaintiff immediately in case number 1480530, Plaintiff was not released.  (SAC ¶ 37.)  On December 13, 2019, after his court appearance was concluded, Plaintiff was transported to Stanislaus County Jail.  (SAC ¶ 38.)  That day, a copy of the state court's minute order was provided to SCSD.  (Id.)  When Plaintiff realized he was not being released, he informed Defendants in the Stanislaus County Jail that the judge had ordered his release.  (SAC ¶ 39.)  Defendants did not adequately inquire into or investigate Plaintiff's complaints, and he was not released.  (Id.)

On December 15, 2019, Henry Mendez, acting in his capacity as an employee of SCSD, contacted Solano State Prison and spoke to Joseph Guerrero, who informed Henry Mendez that Plaintiff should be returned to the custody of the CDCR based on the detainer in case 1480530.  (SAC ¶ 40.)  Henry Mendez informed Jose Sousa of the instructions given to him by Joseph Guerrero.  (SAC ¶ 41.)  Henry Mendez and Jose Sousa chose to follow the advice of Joseph Guerrero and return Plaintiff to CDCR's custody, rather than follow the court's order to release Plaintiff.  (SAC ¶ 41.)

Plaintiff remained incarcerated in Stanislaus County Jail until December 18, 2019.  (SAC ¶ 42.)  During the time he was incarcerated in Stanislaus County Jail, Plaintiff informed Defendants on a daily basis that he had been ordered released, to no avail.  (SAC ¶ 43.)  On December 18, 2019, Plaintiff was transported to the California State Prison, Solano.  (SAC ¶ 44.)  Shortly after arriving at California State Prison Solano, Plaintiff informed Defendants at Solano that he had been ordered released and was being unlawfully detained, however, Defendants did not adequately inquire into or investigate Plaintiff's complaints, and he was not released.  (SAC ¶ 45.)

Plaintiff contacted his appellate attorney Rafael Goldman, to inform him of the situation, and Mr. Goldman contacted Mary Ellen Hurtle, the attorney who represented Plaintiff at his December 13, 2019 plea and resentencing in Stanislaus County Court.  (SAC ¶ 46.)   On December 30, 2019, Mary Ellen Hurtle began making phone calls to CDCR to determine why Plaintiff had not been released from custody as ordered by Judge Ashley over two weeks earlier.  (SAC ¶ 47.)  She made several phone calls to CDCR over the course of the day.  (Id.)  On December 30, 2019, Defendants initially informed Ms. Hurtle that they would not release Plaintiff because they did not have a minute order from the court, and the parole board would "overrule" the court until CDCR received the court's minute order.  (SAC ¶ 48.)  Later that day, Defendants told Ms. Hurtle they had requested the minute order from the court clerk and were expecting it to be faxed to them.  (SAC ¶ 49.)  During the final phone call between Ms. Hurtle and Defendants on December 30, 2019, Defendants informed Ms. Hurtle they had just received the court's minute order that day.  (SAC ¶ 50.)  During that final phone call, Defendants verified that the minute order authorized Plaintiff's release on December 13, 2019.  (SAC ¶ 51.)  However, they stated it would take an additional five to seven business days to process Plaintiff's release, and estimated due to the New Year's holidays he would not be released until January 7, 2020.  (Id.)

Plaintiff alleges that had Defendants released Plaintiff when they were legally required to do so, he would have celebrated Christmas with family members who had anticipated his homecoming, including a grandmother in her mid-80s, but instead, he remained unlawfully imprisoned.  (SAC ¶ 52.)  Plaintiff was finally released from California State Prison, Solano on January 7, 2020.  (SAC ¶ 53.)  Therefore, Plaintiff was over-detained for a total of 25 days – from December 13, 2019 until January 7, 2020.  (SAC ¶ 54.)  More than a week of his over-detention took place after CDCR admitted they had received the court order stating he was supposed to be free.  (Id.)

On June 23, 2020, Plaintiff submitted a tort claim to the CDCR and the Sheriff's Office.  (SAC 55.)  In a letter dated July 10, 2020, the CDCR, through the California Department of General Services, rejected Plaintiff's tort claim on grounds including that it "involves complex

issues that are beyond the scope of analysis and legal interpretation typically undertaken" by the Government Claims Program Staff.  (SAC ¶ 56.)  In a letter dated August 6, 2020, the Sheriff's Office, through the Board of Supervisors of the County of Stanislaus returned the tort claim without taking action on it.  (SAC ¶ 57.)

The second amended complaint names the following defendants and signifies they were involved in the following capacities: (1) Jeff Dirkse, in his individual capacity, and official capacity as Sheriff of Stanislaus County; (2) Rhona Delacruz, an employee of CDCR who personally processed paperwork relating to Plaintiff's sentence and release; (3) Joseph Guerrero, an employee of CDCR who communicated with other Defendants and individuals regarding Plaintiff's sentence and release; (4) Tania Brown, an employee of CDCR who on or about December 30, 2019, personally processed paperwork related to Plaintiff's sentence and release; (5) Amber Steele-Hicks, an employee of CDCR who on or about December 31, 2019, personally processed paperwork related to Plaintiff's sentence and release; (6) Brandy Smith, an employee of CDCR in a supervisory capacity, who on December 30, 2019, had personal knowledge related to Plaintiff's sentence and release; (7) Elijah Pruitt, an employee of CDCR who was responsible for processing and following up on court records related to Plaintiff's case from October to December of 2019, and was personally aware that Plaintiff's court proceedings were concluded by December 17, 2019; (8) Nichelle Harrington, an employee of CDCR who personally processed paperwork related to Plaintiff's sentence and release, and noted Plaintiff's eligibility for "immediate release" on December 30, 2019; (9) Jose Sousa, an employee of SCSD who communicated with other Defendants and individuals regarding Plaintiff's sentence and release; and (10) Henry Mendez, an employee of SCSD who communicated with other Defendants and individuals regarding Plaintiff's sentence and release.  (Compl. ¶¶ 10-19.)[2]  Plaintiff specifically

---

[2]  The parties refer to Jeff Dirkse, Jose Sousa, and Henry Mendez as the "County Defendants," and Rhona Delacruz, Joseph Guerrero, Tania Brown, Amber Steele-Hicks, Brandy Smith, Elijah Pruitt, and Nichelle Harrington, as the "CDCR Defendants."  (ECF Nos. 34-1 at 6, 37 at 2.)  For purposes of this motion, the Court may use "CDCR Defendants" or simply "Defendants" to refer to the moving Defendants, Rhona Delacruz, Joseph Guerrero, Tania Brown, Brandy Smith, Elijah Pruitt, and Nichelle Harrington.  The Court notes that while Amber Steele-Hicks appears to have been referenced as a CDCR Defendant, she does not appear represented by any counsel on the docket, and has not joined in this motion.  (ECF No. 40.)  The Court notes that in the moving papers, the CDCR Defendants state that the "CDCR Defendants, all added in the SAC, waived service."  (ECF No. 40-1 at 3.)

alleges Defendant Jeff Dirkse was responsible for operating the Stanislaus County jail facilities, including promulgating policies and procedures at those facilities. (Compl. ¶ 10.) Plaintiff also alleges each individual Defendant's "actions and inaction resulted in Plaintiff's overdetention." (Compl. ¶¶ 11-19.)

Plaintiff brings causes of action for: (1) violation of the Fourteenth Amendment to the U.S. Constitution against all Defendants; (2) violation of Article I, Section 7, of the California Constitution against all Defendants; (3) negligence against all Defendants; (4) false imprisonment against all Defendants; (5) Monell and failure to train and supervise against Defendant Dirkse; and (6) vicarious liability against Defendant Dirkse. (SAC ¶¶ 58-89.)

Plaintiff seeks declaratory relief; compensatory damages to include general and special damages; exemplary and/or punitive damages from all Defendants except Dirkse; attorneys' fees and expenses under 42 U.S.C. § 1988(b); and such other relief, including injunctive relief, that is just and proper. (SAC ¶ 91.)

### B.    Procedural Background

Plaintiff initially filed this action on June 22, 2020. (ECF No. 1.) On August 21, 2020, Defendant Jeff Dirkse filed a motion to dismiss. (ECF No. 10.) On September 4, 2020, Plaintiff filed a motion to amend. (ECF No. 15.) On September 11, 2020, the Court granted Plaintiff's unopposed motion to amend. (ECF No. 20.) On September 15, 2020, Plaintiff filed a first amended complaint. (ECF No. 21.) On September 29, 2020, a motion to dismiss was filed which was referred to the undersigned for the preparation of findings and recommendations. (ECF Nos. 27, 28.) On October 12, 2020, the parties filed a stipulation for a second amended complaint to be filed and for the pending motion to dismiss to be applied to the second amended complaint, and the hearing on the motion to dismiss to be continued to December 9, 2020. (ECF No. 29.) On October 13, 2020, the Court granted the stipulation in part allowing for the filing of a second amended complaint, however, the Court denied the parties' request to apply the filed motion to dismiss to the to-be-filed second amended complaint. (ECF No. 30.) The Court's order specified that the motion to dismiss should be corrected to align with the allegations in the second amended complaint and be refiled. (Id.) On October 14, 2020, Plaintiff filed a second

1  amended complaint, rendering the motion to dismiss moot, and the Court denied the motion to

2  dismiss as moot.  (ECF Nos. 31, 32.)

3      On October 23, 2020, the County Defendants, Jeff Dirkse, Jose Sousa, and Henry

4  Mendez, filed a motion to dismiss.  (ECF No. 34.)  On November 25, 2020, Plaintiff filed an

5  opposition to the motion to dismiss.  (ECF No. 37.)  On December 2, 2020, Defendants filed a

6  reply brief.  (ECF No. 38.)  On December 9, 2020, the Court held a hearing on the motion via

7  videoconference.  (ECF No. 39.)

8      On December 14, 2020, CDCR Defendants Tania Brown, Rhonda Delacruz, Joseph

9  Guerrero, Nichelle Harrington, Elijah Pruitt, and Brandy Smith, filed a separate motion to

10 dismiss, along with a request for judicial notice.  (ECF Nos. 40, 41.)  The district judge referred

11 the  CDCR  Defendants'  motion  to  the  undersigned  for  preparation  of  findings  and

12 recommendations.  (ECF No. 42.)

13     On December 18, 2020, the Court issued findings and recommendations recommending

14 the County Defendants' motion to dismiss be granted in part and denied in part.  (ECF No. 43.)

15     On December 30, 2020, Plaintiff filed an opposition to the CDCR Defendants' motion to

16 dismiss.  (ECF No. 45.)  On December 30, 2020, the Court also granted the CDCR Defendants'

17 request to seal an exhibit attached to the motion to dismiss.  (ECF No. 47.)

18     On December 31, 2020, Plaintiff filed a motion for clarification of the December 18,

19 2020 findings and recommendations, or in the alternative, objections to the findings and

20 recommendations.  (ECF No. 48.)  On December 31, 2020, The County Defendants also filed

21 objections to the December 18, 2020 findings and recommendations.  (ECF No. 49.)  On January

22 5, 2021, the Court denied in part and granted in part Plaintiff's motion for clarification, amended

23 the  December  18,  2020  findings  and  recommendations,  and  ordered  the  parties  to  file  any

24 renewed objections within fourteen (14) days of entry of the order.  (ECF No. 50.)

25     On January 6, 2021, the CDCR Defendants filed a reply to Plaintiff's opposition brief.

26 (ECF No. 51.)  On January 12, 2021, the Court issued an order vacating the hearing on the

27 CDCR Defendants' motion to dismiss, previously set for January 13, 2021.  (ECF No. 54.)  On

28 January 13, 2021, Plaintiff filed a response to the County Defendants' objections to the pending

1  December 18, 2020 findings and recommendations.  (ECF No. 55.)

2  ## III.

3  ## LEGAL STANDARD

4  Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

5  the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

6  motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro

7  v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations

8  of material fact are taken as true and construed in the light most favorable to the nonmoving

9  party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading

10  standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual

11  allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me

12  accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

13  Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-

14  pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However,

15  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

16  statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint

17  must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550

18  U.S. at 570.

19  In deciding whether a complaint states a claim, the Ninth Circuit has found that two

20  principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

21  "may not simply recite the elements of a cause of action, but must contain sufficient allegations

22  of underlying facts to give fair notice and to enable the opposing party to defend itself

23  effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair

24  to require the defendant to be subjected to the expenses associated with discovery and continued

25  litigation, the factual allegations of the complaint, which are taken as true, must plausibly

26  suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there

27  is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

28  legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696,

1  699 (9th Cir.1988)).

2  **IV.**

3  **ANALYSIS AND DISCUSSION**

4  The CDCR Defendants' motion to dismiss is brought on four primary grounds: (A)

5  Plaintiff has not stated a cognizable claim under 42 U.S.C. § 1983 against the CDCR

6  Defendants; (B) the CDCR Defendants are entitled to qualified immunity on Plaintiff's federal

7  claim; (C) Plaintiff's state law claims are barred due to failure to comply with the California

8  Government Claims Act; and (D) each of Plaintiff's claims fail because he was still legally

9  within CDCR's custody when released on parole.  (CDCR Defs.' Mem. P. & A. Supp. Defs.'

10 Mot. Dismiss Pl.'s SAC ("Mot"), ECF No. 40-1.)

11 **A.    The Court Recommends Dismissing Defendants' Motion to Dismiss**
12 **       Plaintiff's First Cause of Action**

13 The CDCR Defendants move to dismiss Plaintiff's first cause of action for failure to state

14 a cognizable claim.  (Mot. 4.)

15 1.    The Parties' Arguments

16 The CDCR Defendants argue Plaintiff's first cause of action fails because it attempts to

17 state a claim for a due process violation under the Fourteenth Amendment, when claims against

18 prison officials for overdetention arise under the Eighth Amendment and require pleading facts

19 that plausibly demonstrate deliberate indifference under the Eighth Amendment.  (Mot. 4.)

20 Defendants provide the Court with only one case in support of this proposition.  (Id., citing

21 Bratton v. Cty. of Riverside, No. EDCV1800044JVSGJS, 2019 WL 506109, at *4 (C.D. Cal.

22 Jan. 7, 2019), report and recommendation adopted, No. EDCV 18-44-JVS (GJS), 2019 WL

23 498793 (C.D. Cal. Feb. 8, 2019).)

24 Defendants proffer that based on Bratton, Plaintiff's allegations do not allege all the

25 elements of a deliberate indifference claim, and as in Bratton, Plaintiff makes a vague allegation

26 that he orally informed unspecified defendants that he was ordered released "shortly after

27 arriving at Solano," but does not allege providing them any copy of an amended abstract of

28 judgment or minute order upon his return to CDCR custody on December 18, 2019, (SAC ¶ 45).

(Mot. 4-5.)  Defendants emphasize that Plaintiff has not even alleged that CDCR received a copy of the minute order changing his release date until December 30, 2019, and that Plaintiff makes the broad claim that "Defendants" received a phone call from Plaintiff's counsel and a copy of the order on December 30, 2019, without identifying who received the order or the call.  (Mot. 5; SAC ¶¶ 47-51.)

Even assuming *arguendo* that each CDCR Defendant received notice of the change in Plaintiff's sentence on December 30, 2019, Defendants state deliberate indifference has not been shown because Plaintiff was released within five business days following notice of the order to CDCR.  (Mot. 5; SAC ¶ 51.)  Defendants here direct the Court to examine the California Code of Regulations which provide that an inmate shall be released no later than five business days after receipt of an order directing immediate release:

> (2) Notwithstanding subsection 3043(c) of this division, if an abstract of judgment, amended abstract of judgment, or other court order is received for an inmate who has been incarcerated by the department for at least five business days and it is determined that the inmate is immediately eligible for release or eligible for release within the following five business days, he or she shall be released no later than five business days after receipt of the abstract of judgment, amended abstract of judgment, or court order.

(Cal. Code Regs. tit. 15, § 3371.1(e)(2).)[3]  Defendants contend that rather than ignoring the changed sentence, the CDCR Defendants acted to release him within the time allowed by CDCR regulations, emphasizing that: CDCR received the court order on December 30, 2019 (SAC ¶¶ 48-50); nothing in the complaint indicates the CDCR Defendants were aware of the changed sentence at any time before December 30, 2019; Plaintiff was released on January 7, 2020, which is within five business days; and accordingly, CDCR Defendants acted to facilitate Plaintiff's release within the time allowed by law and did not ignore the resentencing order.  (Mot. 5.)

---

[3]  It appears Defendants provide the wrong citation to Section 3377.1 rather than 3371.1, and the Court references Section 3371.1 instead here.  (Mot. 5.)  Because the Court finds below that Defendants' motion is improperly premised on the undeveloped argument that an overdetention claim can only be brought under the Eighth Amendment, the Court need not reach Defendants' specific arguments such as this one.  However, the Court would tend to agree with Plaintiff that an agency regulation cannot override a judicial determination of what is a constitutionally permissible time of detainment beyond the point where a prisoner is deemed entitled to be immediately released.  See Barnes v. D.C., 793 F. Supp. 2d 260, 276 (D.D.C. 2011) ("In recognition of these facts, courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48–hour horizon set out in *McLaughlin*.") (citing County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Berry v. Baca, 379 F.3d 764, 771–72 (9th Cir. 2004); Brass v. County of Los Angeles, 328 F.3d 1192, 1200 (9th Cir.2003)).

1    The Court notes that Plaintiff's opposition does not appear to directly or clearly dispute

2    the Defendants' contention that the claim is improperly brought for a due process violation rather

3    than an Eighth Amendment deliberate indifference claim, only discussing <u>Bratton</u> when

4    discussing qualified immunity.  (Pl.'s Opp'n Defs.' Mot. Dismiss ("Mot") 9, ECF No. 45.)  This

5    is highlighted in Defendants' reply brief, stating "Plaintiff does not appear to dispute that his

6    claim against the CDCR Defendants is one for deliberate indifference under the Eighth

7    Amendment." (CDCR Defs.' Reply Pl.'s Opp'n ("Reply"), ECF No. 51.)   However, Plaintiff

8    does primarily emphasize that it is well established that a prisoner has a "due process right to be

9    released within a reasonable time after the reason for his detention [has] ended."  (Opp'n 3,

10   quoting <u>Brass v. County of Los Angeles</u>, 328 F.3d 1192, 1200 (9th Cir. 2003).)

11         2.    The Court Recommends Denying Defendants' Motion to Dismiss

12         Turning to the lone case cited by the CDCR Defendants, <u>Bratton</u>, 2019 WL 506109, the

13   Court notes that the case does not appear to stand for the Defendants' argument that Plaintiff's

14   "attempt to sue the CDCR Defendants for a due process violation under the Fourteenth

15   Amendment," fails because "claims against prison officials for over-detention arise under the

16   Eighth Amendment."  (Mot. 4).   Rather, <u>Bratton</u> analyzed the overdetention claim under the

17   Eighth Amendment because that was how the action was filed by the *pro se* plaintiff in that

18   action.  The court found it significant that the *pro se* plaintiff failed to provide any factual details

19   pertaining to individual defendants despite warnings provided in screening the complaint prior to

20   the filing of the motion to dismiss.  The court found as follows, relying on <u>Haygood v. Younger</u>,

21   769 F.3d 1350, 1354-58 (9th Cir. 1985):

23         Plaintiff's overdetention claim is brought under the Eighth Amendment. *See, e.g.,*
           *Haygood v. Younger*, 769 F.3d 1350, 1354-58 (9th Cir. 1985) (*en banc*)
           (indicating that: when an overdetention situation is the result of deliberate
24         indifference to a prisoner's liberty interest in being free from wrongful
           incarceration (such as an intentional refusal to investigate an overdetention
25         situation), the claim may be raised under the Eighth Amendment). To state a
           viable Eighth Amendment-based Section 1983 claim based on overdetention, a
26         plaintiff must show that a particular custodial official knew of and disregarded a
           substantial risk that the plaintiff was being incarcerated beyond the lawful
27         termination of his sentence. *See id.* at 1354-55; *see also Farmer v. Brennan*, 511
           U.S. 825, 842 (1994) (prison official's conduct constitutes "deliberate
28         indifference" when "official acted or failed to act despite his knowledge of a

1    substantial risk of serious harm" to plaintiff) . . .

2    . . . The same defect as to the Moving Defendants that existed in the original
3    Complaint – and about which Plaintiff was warned [Dkt. 11] – exists in the FAC.
     The fundamental problem with the FAC as to the Moving Defendants is that it
4    contains only vague, conclusory, and wholly barebones allegations against them
     *en masse.* This barebones and conclusory allegation, bereft of any actual facts, is
5    inadequate to to [sic] state a claim to relief that is plausible on its face, namely,
     that allows the Court to reasonably infer that the Moving Defendants are liable for
6    Plaintiff's claimed overdetention and raises his right to relief above a speculative
     level. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. As Plaintiff
7    previously was advised, the Eighth Amendment inquiry requires "a very
     individualized approach which accounts for the duties, discretion, and means of
8    each defendant," and the plaintiff "must establish individual fault" and "set forth
     specific facts as to each individual defendant's deliberate indifference." [citations]

9    Bratton, 2019 WL 506109, at *4 (C.D. Cal. Jan. 7, 2019).

10       In addition to the fact that the court in Bratton analyzed the claim under the Eighth

11   Amendment because that it is how it was brought, the case relied on, Haygood, analyzed the

12   claim both under the Eighth Amendment and under Fourteenth Amendment due process

13   standards.  Haygood, 769 F.2d at 1354 ("Detention beyond the termination of a sentence could

14   constitute cruel and unusual punishment if it is the result of "deliberate indifference" to the

15   prisoner's liberty interest, [citation], otherwise, such detention can be held to be unconstitutional

16   only if it violates due process."); see also Alston v. Read, 663 F.3d 1094, 1099 (9th Cir. 2011)

17   (noting that in Haygood, the Ninth Circuit "concluded that an overdetention caused by the

18   erroneous calculation of a prisoner's release date had violated the prisoner's Eighth and

19   Fourteenth Amendment rights."); Beckstrand v. Read, 563 F. App'x 533, 534 (9th Cir. 2014)

20   ("While our cases provide some support for a due process or Eighth Amendment right against

21   overdetention, *see, e.g.*,  *Haygood v. Younger*, 769 F.2d 1350 (9th Cir.1985) (en banc), they do

22   not speak to any analogous Fourth Amendment right."); Routt v. Howry, No. 19-6187, 2020 WL

23   6940791, at *4 (10th Cir. Nov. 25, 2020) ("In upholding a jury verdict in Haygood's favor on his

24   § 1983 claims, the Ninth Circuit ruled that prison officials had a duty to investigate his claim of

25   computational error in the calculation of his sentence and their failure to do so raised viable due

26   process and Eighth Amendment claims.").

27       Specifically, in Haygood, the Ninth Circuit first upheld the district court's determination

28   under the Eight Amendment standard:

13

As the district court noted, "[T]he plaintiff presented credible evidence that the defendants, after being put on notice, simply refused to investigate a computational error." [citation]  Thus, there was adequate evidence from which the jury could have found liability under the appropriate standard of "deliberate indifference" and we need not determine whether the district court was correct in concluding there was sufficient evidence to support a finding of liability under the more stringent standard of actual intent.

Haygood, 769 F.2d at 1355.  Then as to a due process violation, the Ninth Circuit found:

The record in Haygood's case revealed that he had been afforded due process before each of his sentences was imposed. Thus he was properly convicted of escape, and properly sentenced. The denial of due process occurred when state officers, through established interpretations of the regulations for setting release dates, without affording Haygood an opportunity to be heard, chose to extend his custodial period. This de facto government policy gave rise to a § 1983 claim against Records Officers Cranke and Seymour approximately seventeen months before Haygood's litigation established the proper release date. When Haygood finally, by means of habeas corpus, came before the state Supreme Court, he obtained the judgment holding that he should have been released five years earlier. This was remedial, or postdeprivation, relief in part at least, but it did not satisfy the *Logan, Morrissey,* and *Mathews* line of cases that require a hearing before the rights are taken away. For these reasons, we hold that Haygood has stated a § 1983 claim for damages for denial of liberty without due process of law.

Haygood, 769 F.2d at 1358.

"Thus, 'the loss of liberty caused by an individual's mistaken incarceration after the lapse of a certain amount of time gives rise to a claim under the Due Process Clause of the Fourteenth Amendment,' [and] [m]oreover, 'since imprisonment is punitive, officials who detain a person may violate that person's rights under the Eighth Amendment if they act with deliberate indifference to the prisoner's liberty interest.' "  Sanchez v. Pedriero, No. 1:14-CV-00594-MJS PC, 2015 WL 3402974, at *3 (E.D. Cal. May 27, 2015) (first quoting Lee v. City of Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001); then quoting Stein v. Ryan, 662 F.3d 1114, 1118 (9th Cir.2011)); see also Gant v. Cty. of Los Angeles, 772 F.3d 608, 619 (9th Cir. 2014) ("And in *Lee,* we confirmed that wrongful detention can ripen into a due process violation, but it is a plaintiff's burden to show that 'it was or should have been known [by the defendant] that the [plaintiff] was entitled to release. [citation] *Lee* did not define the point at which repeated pleas of innocence ripen into a Fourteenth Amendment violation.").

"The Ninth Circuit has held that mistaken incarcerations violate the Fourteenth

1   Amendment where defendants knew or should have known that Plaintiff was entitled to release
2   and one or both of the following circumstances is present: 1) the situation indicated that further
3   investigation of Plaintiff's assertions of wrongful incarceration was warranted or 2) defendants
4   have, for a significant period, deprived the plaintiff of a judicial forum to examine his claims."
5   Sanchez, 2015 WL 3402974, at *3 (citing Rivera v. Cty. of Los Angeles, 745 F.3d 384, 390–91
6   (9th Cir. 2014) ("Cases holding that an incarceration violated the Due Process Clause because
7   defendants should have known the plaintiff was entitled to release fit at least one of two
8   categories: (1) the circumstances indicated to the defendants that further investigation was
9   warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period
10  of time.")).

11      As a later court in the same district as Bratton stated, "[i]f a prisoner's overdetention is
12  not the result of deliberate indifference, it can be held unconstitutional only if it violates due
13  process," and to state such claim, a plaintiff must allege facts demonstrating "(1) he had a state-
14  created liberty interest in being released from custody on the earlier date; and (2) the state 'failed
15  to follow minimum due process appropriate to the circumstances to ensure that liberty [was] not
16  arbitrarily abrogated.' "  Bedford v. California Dep't of Corr. & Rehab., No. CV 19-5718 CAS
17  (FFM), 2020 WL 2543318, at *3 (C.D. Cal. Mar. 25, 2020) (quoting Haygood, 769 F.2d at 1354-
18  55), report and recommendation adopted, No. 2:19-05718 CAS (ADS), 2020 WL 2549935 (C.D.
19  Cal. May 15, 2020).

20      Thus, the CDCR Defendants' primary basis for the motion to dismiss Plaintiff's first
21  cause of action is improperly focused on the contention that the claim must have been brought
22  under the Eighth Amendment and its deliberate indifference standard.   The Court would
23  recommend denying the CDCR Defendants' motion on this ground given the CDCR Defendants'
24  have not clearly articulated a basis to dismiss the cause of action under the proper framework and
25  without providing the Court with adequate authority for their propositions.[4]

---

26  [4]  The Court notes that even in the complaint, Plaintiff cites caselaw stating the claim is based on the due process
27  right to be released within a reasonable time after the reason the detention has ended, and for violating the
    corresponding duty to investigate a prisoner's claim he is entitled to release.  (SAC ¶ 59, citing Brass, 328 F.3d at
    1200; Haygood, 769 F.2d 1350.)  Defendants failed to inform the Court why these cases are inapplicable to the
28  circumstances here.  The Court notes that it has found that at least the Eleventh Circuit has held a deliberate

**B.     The Court Recommends Denying Defendants' Motion to Dismiss based on Qualified Immunity**

The CDCR Defendants argue that even if a constitutional claim is stated, they are entitled to qualified immunity.  (Mot. 5-7.)

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  " 'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " Stanton v. Sims, 571 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.  A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the

---

indifference standard applies to an overdetention claim brought under the Due Process Clause of the Fourteenth Amendment, and thus, even if the Court were to accept that Plaintiff must demonstrate deliberate indifference, it does not appear it must have been claimed as an Eighth Amendment claim. See West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007) ("Plaintiffs assert that their over-detention resulted in a violation of their Fourteenth Amendment due process right to be free from continued detention after the state should have known that they were entitled to release . . . To establish such a violation, Plaintiffs must show that Defendants acted with deliberate indifference to Plaintiffs' due process rights.").  The Court has located no such similar on-point authority in the Ninth Circuit, and Defendants' legal authority clearly does not demonstrate such to the Court.  Outside of an action involving overdetention, but rather "punishment," the Court has located a recent Ninth Circuit action wherein the court noted that inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or, if not yet convicted, may sue under the Fourteenth Amendment's Due Process Clause, with such claims both types of claims being subject to a deliberate indifference standard. Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016).  This is because prior to conviction, a detainee may not be punished. Id. at 1068.  The Ninth Circuit also noted that the "standard to find an individual deliberately indifferent under the Fourteenth Amendment, however, is less clear." Id.  Thus, given this additional caselaw, and the caselaw discussed above, it is apparent the Defendants have not provided the Court a sufficient basis to weigh or consider dismissing Plaintiff's claim as improperly brought under the Fourteenth Amendment rather than the Eighth Amendment, and additionally, whether a deliberate indifference standard would apply to a claim under the Fourteenth Amendment, and whether the standard to find an individual deliberately indifferent is a different analysis under the Fourteenth Amendment than the Eighth Amendment.

1  qualified immunity analysis should be addressed first in light of the circumstances in the
2  particular case at hand." Pearson, 555 U.S. at 236.  The inquiry as to whether the right was
3  clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196,
4  1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th
5  Cir. 2009)).

6       It is not required that there be a case directly on point before concluding that the law is
7  clearly established, "but existing precedent must have placed the statutory or constitutional
8  question beyond debate." Stanton, 134 S.Ct. at 5 (quoting Ashcroft v. al–Kidd, 131 S.Ct. 2074,
9  2085 (2011).  A right is clearly established where it is "sufficiently clear that every reasonable
10 official would [have understood] that what he is doing violates that right." Hines, 914 F.3d at
11 1229 (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  In determining if the right is
12 clearly established, the court must consider the law, "in light of the specific context of the case,
13 not as a broad general proposition." Hines, 914 F.3d at 1229 (Mullenix v. Luna, 136 S.Ct. 305,
14 308 (2015)).

15      At this stage of the proceedings, the Court recommends denying, without prejudice to
16 renewal at summary judgment, Defendants' motion to dismiss based on qualified immunity.  It is
17 true that issues of qualified immunity should be resolved at the earliest possible stage of
18 litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991).  However, the Ninth Circuit has stated
19 that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special
20 problems for legal decision making." Keates v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018).
21 "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule
22 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that
23 qualified immunity applies." O'Brien, 818 F.3d at 936 (citation and internal quotation marks
24 omitted).  "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not
25 only those that support his claim, but also those that defeat the immunity defense." McKenna v.
26 Wright, 386 F.3d 432, 436 (2d Cir. 2004).  "If the operative complaint 'contains even one
27 allegation of a harmful act that would constitute a violation of a clearly established constitutional
28 right,' then plaintiff[ is] 'entitled to go forward' with [his] claims." Keates, 883 F.3d at 1235

1  (quoting Pelletier v. Fed. Home Loan Bank of San Francisco, 968 F.2d 865, 872 (9th Cir. 1992)).

2        Based on these standards applied at the motion to dismiss stage, and for reasons

3  discussed below, the Court finds Plaintiff has alleged sufficient facts concerning the failure to

4  adhere to a court order of release despite protests from Plaintiff that the court order entitled him

5  to immediate release, or sufficient facts concerning a potential failure to investigate or obtain

6  such court order, or sufficient facts demonstrating a failure to release Plaintiff from custody

7  within a reasonable time after the reason for his detention ended.  See Lee, 250 F.3d 683 (9th

8  Cir. 2001) (noting a detainee has "a constitutional right to be free from continued detention after

9  it was or should have been known that the detainee was entitled to release.") (quoting Cannon v.

10  Macon County, 1 F.3d 1558, 1563 (11th Cir.1993)); Beckstrand v. Read, 563 F. App'x 533, 534

11  (9th Cir. 2014) (in holding that there was no clearly established right under the Fourth

12  Amendment against overdetention, noting "our cases provide some support for a due process or

13  Eighth Amendment right against overdetention.") (citing Haygood, 769 F.2d 1350); Gillum v.

14  Owens, No. 219CV01859RSMBAT, 2020 WL 6162854, at *3 (W.D. Wash. Sept. 25, 2020)

15  (denying qualified immunity at summary judgment stage based on allegations that defendants

16  violated his constitutional rights when, in contradiction to two orders of temporary release, they

17  continued to detain him and did not transport him within a reasonable time to address the other

18  matter), report and recommendation adopted, No. 219CV01859RSMBAT, 2020 WL 6158980

19  (W.D. Wash. Oct. 21, 2020); Traweek v. Gusman, 414 F. Supp. 3d 847, 860, 866 (E.D. La.

20  2019) ("Mr. Traweek has alleged facts sufficient to overcome LeBlanc's and Jones's assertions

21  of qualified immunity at the pleadings stage. Mr. Traweek alleges his paperwork (including the

22  OPSO-prepared Letter of Credit, which was created on May 3 and showed he had served his

23  entire seven-month sentence) had not been sent to DOC by OPSO until Thursday, May 17, 2018.

24  That paperwork sat at DOC unreviewed until Monday, May 21, when Ashley Jones "began

25  computing" Traweek's credit and "performing other searches relevant to his release."

26  Notwithstanding Mr. Traweek's allegations indicating that his paperwork and Letter of Credit

27  when compared to his criminal court judgment on its face obviously entitled him to immediate

28  release, it was not until sometime later the next day, Tuesday, May 22, after Traweek's counsel

filed a petition for habeas corpus, that Ms. Jones created Mr. Traweek's Certificate of Release; he was released on 3:00 p.m. that day."); c.f Alston, 663 F.3d at 1099–100 ("Thus, neither *Haygood* nor *Alexander* establishes a duty to obtain a prisoner's court file where the institutional file appears complete, the sentence was appropriately recalculated under state law, and the prisoner has presented no evidence to the contrary . . . We conclude that there is no clearly established duty on a prison official to review a prisoner's original court records beyond those in his institutional file on the facts of this case [and] Read and Simmons are entitled to qualified immunity."); Torres v. Read, 593 F. App'x 742, 743 (9th Cir. 2015) (holding qualified immunity applied based on Alston, 663 F.3d 1094, as a prison official had no clearly established duty under the Eighth and Fourteenth Amendments to a prisoner alleging overdetention beyond reviewing the prisoner's institutional file, relevant state laws, and the original judgment received from the court.").

On December 13, 2019, Plaintiff was ordered released and transferred to the Stanislaus County Jail where he was in the physical custody of the County Defendants when Plaintiff alleges he began informing the County Defendants that he was entitled to release. (SAC ¶¶ 38-39.) While being held at the Stanislaus County Jail, on December 15, 2019, County Defendant Mendez contacted Solano State Prison and spoke to CDCR Defendant Guerrero, who informed Mendez that Plaintiff should be returned to the custody of the CDCR. (SAC ¶¶ 40-41.)

Plaintiff arrived at State Prison Solano on December 18, 2019. (SAC ¶ 44.) Plaintiff then alleges that: "Shortly after arriving at California State Prison Solano, Mr. McDaniel informed Defendants at Solano that he had been ordered released and was being unlawfully detained. Defendants did not adequately inquire into or investigate Mr. McDaniel's complaints, and he was not released." (SAC ¶ 45.) The Court finds these initial allegations involving the first communication of an entitlement of release to the CDCR Defendants to be vague as to who precisely Plaintiff communicated with at this point, and how many times he communicated his protests until the later allegations involving the contact between Plaintiff's attorney and the CDCR employees alleged to occur on December 30, 2019. (SAC ¶ 47.) On December 30, 2019, unspecified Defendants initially informed counsel that they would not release Plaintiff because

1   they did not have a minute order from the court, and the parole board would "overrule" the court

2   until CDCR received the minute order.  (SAC ¶ 48.)  CDCR received the minute order on the

3   same date, and during the final phone call with counsel, unspecified Defendants verified the

4   minute order authorized Plaintiff's release on December 13, 2019, however, stated it would take

5   an additional five to seven business days to process Plaintiff's release, and estimated that due to

6   the New Years holidays, he would not be released until January 7, 2020.  (SAC ¶ 51.)  Plaintiff

7   was ultimately released from California State Prison, Solano, on January 7, 2020.  (SAC ¶ 53.)

8         The complaint also makes certain allegations specific to each Defendant.  Plaintiff alleges

9   Defendant Delacruz "personally processed paperwork related to Plaintiff's sentence and release,

10  and her actions and inaction resulted in Plaintiff's overdetention."  (SAC ¶ 11.)  The Court finds

11  this allegation vague in relation to the complaint as a whole, and may only be referring to the

12  more specific allegation that "[o]n November 13, 2019, Rhona Delacruz acting in her capacity as

13  an employee of CDCR placed a detainer on Plaintiff," and that the "detainer was based on the

14  May 16, 2017 commitment in case 1480530, which had already been reversed by the Court of

15  Appeal for the State of California."  (SAC ¶¶ 27-28.)  While Plaintiff emphasizes the detainer

16  placed on November 13, 2019, the Court notes that Plaintiff did not accept the plea agreement

17  and was not ordered released by the state court until December 13, 2019.  (SAC ¶¶ 27, 31-34.)

18        Similarly, Plaintiff alleges that on or about December 30, 2019, Defendant Brown

19  "personally processed paperwork related to Plaintiff's sentence and release, and her actions and

20  inactions resulted in Plaintiff's overdetention."  (SAC ¶ 13.)[5]  This allegation is also somewhat

21  vague, however, it is at least clear Plaintiff alleges actions by Brown after the state court order,

22  whereas for Defendant Delacruz, it appears Plaintiff may only be referring to the processing of

23  paperwork on November 13, 2019.

24        Plaintiff alleges Defendant Guerrero "communicated with other Defendants and

25  individuals regarding Plaintiff's sentence and release, and his actions and inactions resulted in

26

27  [5]  An almost identical allegation is made against Defendant Steele-Hicks, although a different date is used, and alleges that on or about December 31, 2019, "she personally processed paperwork related to Plaintiff's sentence and release, and her actions and inaction resulted in Plaintiff's overdetention."  (SAC ¶ 14.)  Defendant Steele-Hicks is not a moving party to this motion to dismiss.

28

1   Plaintiff's overdetention."  (SAC ¶ 12.)   As noted above, Plaintiff specifically alleges that on

2   December 15, 2019, Guerrero spoke to County Defendant Mendez, and "informed Mendez that

3   Mr. McDaniel should be returned to the custody of the CDCR based on the detainer in case

4   1480530."  (SAC ¶ 40.)

5        As for Defendant Smith, Plaintiff alleges knowledge and unspecified action/inaction,

6   specifically that she was an employee of CDCR in a supervisory capacity, and that "[b]y

7   December 30, 2019, she had personal knowledge related to Plaintiff's sentence and release, and

8   her actions and inaction resulted in Plaintiff's overdetention."  (SAC ¶ 15.)

9        Defendant Pruitt is alleged to have been "responsible for processing and following up on

10  court records related to Plaintiff's case from October to December 2019," and "was personally

11  aware that Plaintiff's court proceedings were concluded by December 17, 2019, and his actions

12  and inaction resulted in Plaintiff's overdetention."  (SAC ¶ 16.)

13       Defendant Harrington is alleged to have "personally processed paperwork related to

14  Plaintiff's sentence and release, noted Plaintiff's eligibility for 'immediate release' on December

15  30, 2019, and [Harrington's] actions and inaction resulted in Plaintiff's overdetention."  (SAC ¶

16  17.)

17       Defendants do not discuss the individual allegations specific to each Defendant in the

18  moving brief nor the reply brief, but rather argue generally that the complaint's allegations are

19  too vague to meet the strict standards to show deliberate indifference under the Eighth

20  Amendment.  The lack of specific challenges is further highlighted by, for example, the fact that

21  Defendants did not move to dismiss Defendant Smith for failure to state a claim for supervisory

22  liability, and did not present any argument or presentation of the standard for supervisory

23  liability, even though that appears to be the central claim against Defendant Smith.

24       Defendants argue that because there must be prior precedent where a prison official acted

25  under similar circumstances, Sharp v. County of Orange, 871 F.3d 901, 911, 916 (9th Cir. 2017),

26  the "CDCR Defendants cannot be held liable unless there is prior precedent establishing that

27  releasing an inmate who was resentenced from a 150-years-to-life sentence to a sentence of

28  essentially time-served plus a period of parole within five business of receipt of the court order

21

1   with the new sentence violated the inmate's civil rights."  (Mot. 6.)  Defendants contend Bratton,

2   2019 WL 506109, "plainly shows the state of the law in 2019, and that is was not clearly

3   established that prison officials in the CDCR Defendants' positions could be liable for over-

4   detention."  (Mot. 6.)

5   Plaintiff responds that while Defendants are correct that the qualified immunity analysis

6   requires specificity, it need not include totally extraneous facts.  The Court largely agrees with

7   Plaintiff that the facts of "resentenced from a 150-years-to-life sentence to a sentence of

8   essentially time-served plus a period of parole" are extraneous, and have little to do with the

9   constitutional analysis of Plaintiff's claim, as when a court orders someone be freed, the person's

10  liberty interest is the same regardless of what their sentence might have been if the circumstances

11  were different.  However, the Court considers that perhaps the length of the previous sentence

12  could indicate an official's mistake or decision not to immediately release a prisoner was more or

13  less reasonable, however, such reasonableness questions indicate if anything, the question of

14  qualified immunity is not best solved under the facts presented here at the motion to dismiss

15  stage.

16  The Court recommended denying the motion to dismiss the first cause of action largely

17  based on the insufficiency of the caselaw provided as a basis for the motion, supra, Section

18  IV(A).  In weighing the motion to dismiss for failure to state a claim, the Court may have been

19  more inclined or in a better position to consider finding Plaintiff's complaint insufficient to state

20  a claim based on these allegations, or impermissibly vague as to specific Defendants, under a

21  specific framework under that cause of action's standards.   However, the Court was not

22  presented with authority demonstrating the claim must have been brought under the Eighth

23  Amendment, or authority demonstrating why Plaintiff's claim would fail as a Fourteenth

24  Amendment Due Process claim as to these Defendants.

25  The issues with relying on Bratton, 2019 WL 506109, were discussed at length in the

26  previous section, and therefore, the Court agrees with Plaintiff that it would be improper to rely

27  on the case for Defendants' contention that it "plainly shows the state of the law in 2019, and

28  that is was not clearly established that prison officials in the CDCR Defendants' positions could

1    be liable for over-detention." (Mot. 6.) The <u>Bratton</u> court did not discuss qualified immunity,

2    and dismissed a number of CDCR employees because the plaintiff only made "vague,

3    conclusory, and wholly barebones allegations against them *en masse*," and dismissed others

4    because they had not been served. <u>Bratton</u>, 2019 WL 506109, at *4-5.

5        Given these reasons, and the particular issues involved in deciding whether qualified

6    immunity applies at the motion to dismiss stage, the Court finds Defendants have not met their

7    burden of demonstrating they are entitled to qualified immunity based on the various allegations

8    in the complaint. <u>See</u> <u>McKenna</u>, 386 F.3d at 436 ("Thus, the plaintiff is entitled to all reasonable

9    inferences from the facts alleged, not only those that support his claim, but also those that defeat

10   the immunity defense."); <u>Keates</u>, 883 F.3d at 1235 ("If the operative complaint 'contains even

11   one allegation of a harmful act that would constitute a violation of a clearly established

12   constitutional right,' then plaintiff[ is] 'entitled to go forward' with [his] claims.") (quoting

13   <u>Pelletier</u>, 968 F.2d at 872). Giving Plaintiff the benefit of all reasonable inferences concerning

14   the facts alleged, Defendants have not met their burden of demonstrating there is not even on

15   allegation of a harmful act that would constitute a violation of a clearly established constitutional

16   right. <u>See</u> <u>Lee</u>, 250 F.3d 683; <u>Beckstrand</u>, 563 F. App'x at 534; <u>Brass</u>, 328 F.3d at 1200 (9th Cir.

17   2003) (A prisoner may have a "due process right to be released within a reasonable time after the

18   reason for his detention ended."); <u>Berry</u>, 379 F.3d at 771–72 (9th Cir. 2004) ("Applying

19   *McLaughlin's* stringent proof requirement to post-release detentions of less than forty-eight

20   hours would be difficult to reconcile with the fact that, for the plaintiffs at issue here, there has

21   been a judicial determination that CDCR are entitled to freedom from the criminal justice system.

22   Thus, the societal interest in the processes that result in delay, while significant, may not be as

23   weighty as in the probable cause context . . . Like *Brass* and *Lewis*, we decline to determine a

24   number of hours that is presumptively reasonable for post-release over-detentions. In light of the

25   case law on both post-release over-detentions and *Monell* claims of deliberate indifference, we

26   find no basis for holding the detentions at issue presumptively reasonable as a matter of law.");

27   <u>Barnes</u>, 793 F. Supp. 2d at 276 ("In recognition of these facts, courts appear to agree that the

28   maximum permissible administrative delay in the overdetention context likely falls well short of

1   the 48–hour horizon set out in *McLaughlin*.") (citing <u>Berry</u>, 379 F.3d at 771-72; <u>Brass</u>, 328 F.3d

2   at 1202); <u>see also</u> <u>Lewis v. O'Grady</u>, 853 F.2d 1366, 1370 (7th Cir. 1988) ("We recognize that

3   the administrative tasks incident to a release of a prisoner from custody may require some time to

4   accomplish . . . Reasonable time must be allowed for such matters as transportation, identity

5   verification, and processing.  It is virtually impossible to establish an absolute minimum time to

6   meet all potential circumstances which might exist.  What is a reasonable time for detaining a

7   prisoner in custody is a question best left open for juries to answer based on the facts presented

8   in each case.").

9        Defendants may very well be able to establish qualified immunity at the summary

10   judgment stage.  <u>See</u> <u>West</u>, 496 F.3d at 1327 ("Defendant Whitton had been employed at the Jail

11   for only a few weeks . . . entered some of the relevant information into the computer system but

12   failed to deliver the jail card to the docketing room [and plaintiff] pointed to no evidence

13   showing that Whitton subjectively knew that her acts would lead to West's over-detention or that

14   she disregarded any such risk . . . although Defendant Davis was an experienced records

15   specialist and testified that she understood the risks associated with her duties, nothing evidences

16   that her failure to ensure that West's jail card reached the docket room resulted from anything

17   more than negligence [and] Davis testified that the West release papers simply "fell between the

18   gaps" because of the volume of work in the records room, and testimony from other Jail staff

19   supports her assertion.").  However again, under the qualified immunity framework at the motion

20   to dismiss stage, and given the reasons discussed above including a lack of a sufficient proffer as

21   to why each of these Defendants would be entitled to qualified immunity following the failure to

22   properly bring the motion to dismiss for failure to state a claim, the Court would recommend

23   denying Defendants' motion to dismiss based on qualified immunity.  <u>See, e.g.</u>, <u>Cornel v.</u>

24   <u>Hawaii</u>, No. CV 19-00236 JMS-RT, 2020 WL 3271934, at *7 (D. Haw. June 17, 2020) (given

25   special problems of determining claims of qualified immunity at motion to dismiss stage and

26   outstanding factual questions, finding it premature to determine qualified immunity given the

27   reasonableness inquiry under Fourth Amendment standard, and difficulty in assessing what

28   process was due under the Section 1983 due process claim).

1  / / /

2      Accordingly, the Court recommends the CDCR Defendants' motion to dismiss on

3  grounds of qualified immunity be denied.[6]

4          **C.      Compliance with the California Government Claims Act**

5      CDCR Defendants move to dismiss Plaintiff's second, third, and fourth causes of action

6  for failure to comply with the California Government Claims Act ("Claims Act").  Plaintiff does

7  not dispute a failure to comply with the California Government Claims Act, and accedes to

8  dismissal of the state law damages claims.  However, given the recognition in the prior findings

9  and recommendations that the Claims Act only encompasses claims for damages, (ECF No. 43 at

10 50), as acknowledged in CDCR Defendants' briefing (ECF No. 40-1 at 7), Plaintiff requests the

11 state claims be dismissed only in regard to their claims for damages and not as to other forms of

12 relief.  (Opp'n 14.)  Alternatively, Plaintiff asks for leave to amend the complaint to plead only

13 declaratory relief for the state law tort claims, Weimer v. Cty. of Kern, No. 1:06-CV-

14 00735OWWDLB, 2006 WL 3834237, at *9 (E.D. Cal. Dec. 28, 2006).

15     CDCR Defendants respond that under California law, a claim for declaratory relief is

16 prospective, and where the alleged wrongdoing is in the past, a claim for declaratory relief

17 cannot stand.  (Reply 2, citing Gafcon Inc. v. Ponsor & Associates, 98 Cal.App.4th 1388, 1403

18 (2002); Giraldo v. Dep't of Corr. & Rehab., 168 Cal. App. 4th 231, 257–58, 85 Cal. Rptr. 3d 371,

19 392 (2008)).

20     Given the facts alleged on the face of the operative complaint, and the fact that Plaintiff

21 does not dispute a failure to timely present the claim under the California Government Claims

22 Act, the Court recommends Defendants' motion to dismiss the state law claims for failure to

23

24 [6] The Court finds it unnecessary to explore in depth Plaintiff's proffer that the Court should extend the recent
   holding in Tanzin v. Tanvir, No. 19-71, 2020 WL 7250100 (USSC Dec. 10, 2020), to this action, and essentially
25 reexamine the doctrine of qualified immunity for Section 1983 actions.  Plaintiff argues that the recent Supreme
   Court case reflects a growing consensus that the contemporary doctrine of qualified immunity is unmoored from any
26 lawful justification and in need of correction, and that the case requires courts to end the practice of limiting
   constitutional damages remedies for policy reasons.  (Opp'n 11.)  The Court is inclined to agree with CDCR
27 Defendants the case was specific to the Religious Freedom Restoration Act and the right to obtain damages for a
   violation of that Act, and that it did not directly make a holding on the issue of qualified immunity.  Given the Court
28 recommends denying Defendants' motion based on qualified immunity, the Court need not make a decision on this
   issue.

1  comply with the Claims Act be granted for the reasons explained below.  The Court further

2  recommends that any remaining claim for declaratory relief under the state law claims be

3  dismissed, and Plaintiff's request to replead any such claims as only requesting equitable relief

4  be rejected.

5      The County Defendants brought a similar motion to dismiss, and the undersigned issued

6  now pending findings and recommendations that discussed the relevant caselaw in this area at

7  length.  (ECF No. 43 at 43-50.)  The Court incorporates the previous discussion here by way of

8  reference.  (Id.)

9      Plaintiff alleges he filed this lawsuit on June 22, 2020, one day prior to filing the state tort

10  claim, and the agency relevant to CDCR did not deny the claim until July 10, 2020.  (SAC ¶¶ 55,

11  56.)  Based on these facts, the Court would recommend dismissal of Plaintiff's state law claims

12  for damages.  Cal. Gov't Code § 810, *et seq.*; Le Mere v. L.A. Unified School Dist., 35 Cal.App.

13  5th 237, 246 (Cal. Ct. App. 2019) (The Government Claims Act "establishes certain conditions

14  precedent to the filing of a lawsuit against a public entity . . . a plaintiff must timely file a claim

15  for money or damages with the public entity . . . [and] [t]he failure to do so bars the plaintiff

16  from bringing suit against that entity.") (internal citations omitted); Mangold v. California Pub.

17  Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires,

18  as a condition precedent to suit against a public entity, the timely presentation of a written claim

19  and the rejection of the claim in whole or in part [and] [w]here compliance with the Tort Claims

20  Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or

21  the complaint is subject to general demurrer.") (internal citations and quotation marks omitted);

22  Jadwin v. Cty. of Kern, No. 1:07CV00026-OWWDLB, 2009 WL 926844, at *8 (E.D. Cal. Apr.

23  3, 2009); Harvey v. City of S. Lake Tahoe, No. CIV S-10-1653 KJM, 2011 WL 3501687, at *9

24  (E.D. Cal. Aug. 9, 2011); Willis v. City of Carlsbad, 48 Cal. App. 5th 1104, 1119–20, 262 Cal.

25  Rptr. 3d 528, 540–41 (2020) ("Public policy supports the 'strict application' . . . of the claims

26  presentation requirements.") (citation omitted).

27      Plaintiff is correct that the now pending findings and recommendations as to the County

28  Defendants' motion to dismiss acknowledged that the filing requirement of the Claims Act only

encompasses claims for damages.  (ECF No. 43 at 50, citing <u>Robinson v. Alameda Cty.</u>, 875 F.

Supp. 2d 1029, 1044 (N.D. Cal. 2012) ("The filing requirement does not apply to either non-

pecuniary actions such as injunctive, specific, or declaratory relief, or causes of action based

upon federal law."); <u>Nevarez v. Forty Niners Football Co., LLC</u>, 326 F.R.D. 562, 587 (N.D. Cal.

2018) ("The Claims Act does not apply to actions brought primarily for declaratory or injunctive

relief, even though incidental money damages are sought." (internal citation and quotation marks

omitted).)[7]

The CDCR Defendants' motion acknowledges that the Claims Act requires a plaintiff

suing a public employee or entity for damages to timely present a government claim before filing

suit, and that Section 945.4 of the Act provides that "[e]xcept as provided in Sections 946.4 and

946.6, no suit for money or damages may be brought against a public entity on a cause of action

for which a claim is required to be presented in accordance with Chapter 1 (commencing with

Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a

written claim therefor has been presented to the public entity and has been acted upon by the

board, or has been deemed to have been rejected by the board."  (Mot. 7, quoting Cal. Gov't

Code § 945.4.)

However, while Plaintiff is correct that the Claims Act's filing requirement only

encompasses claims for damages, the cases cited by the Court in the previous findings and

recommendations for that proposition, as well as the cases provided by CDCR Defendants in

reply, persuade the Court that any request by Plaintiff to allow him leave to refile these barred

---

[7]  Plaintiff filed a motion for clarification regarding the findings and recommendations, which the Court granted in part, and denied in part.  (ECF No. 50.)  The Court denied Plaintiff's motion for clarification as to a request to clarify the recommendations regarding the Defendants' motion to dismiss Plaintiff's state law claims for failure to comply with the California Government Claims Act.  (<u>Id.</u>)  Plaintiff requested the conclusion section of the findings and recommendations be clarified regarding whether each of Plaintiff's state law causes of action were dismissed only as to the extent they sought damages, or whether certain claims were dismissed entirely.  (ECF No. 48-1 at 2.)  The Court found the recommendations correctly reflected the recommendation that Plaintiff's third, fourth, and sixth causes of action be dismissed entirely, and that Plaintiff's second cause of action be dismissed only to the extent it is seeking damages, and thus, only the Plaintiff's second cause of action was recommended to survive to the extent it seeks declaratory relief.  (ECF No. 50.)  The Court further found that Plaintiff's motion raised issues not brought in briefing on the motion to dismiss, particularly the request for the alternative relief that the recommendation allow leave to amend the complaint to only plead declaratory relief for the state law tort claims.  (<u>Id.</u>)

The Court granted the motion in part, amending the findings and recommendations as to the word "official" and "individual," in one section, that is not relevant to the issues here.  (ECF No. 50.)

1   claims as claims only requesting equitable or declaratory relief should be denied.   Further,

2   having been presented with the caselaw provided by the CDCR Defendants, the Court would

3   now recommend Plaintiff's second cause of action be dismissed, even to the extent it is seeking

4   declaratory relief.

5          First, the Court turns to the cases cited in the previous findings and recommendations.

6   Even if Plaintiff had requested equitable relief specifically as to these causes of action rather than

7   generally as to the entire complaint,[8] or if the Court allowed the general relief portion's inclusion

8   of a request for declaratory relief apply to each and every cause of action, including the state law

9   tort claims, the Court would still recommend dismissal because the monetary relief would not

10  have only been incidental to the equitable relief:

> Moreover, even if Plaintiff's defamation claim seeks injunctive relief or her
> general relief sought pertains to her defamation claim, a CGCA claim is still
> required if she also seeks monetary damages that are not incidental to the relief
> sought. *Lozada v. City & County of San Francisco,* 145 Cal.App.4th 1139, 1146–
> 47, 52 Cal.Rptr.3d 209 (2006). Plaintiff's claim for monetary damages is "more
> than incidental" to her request for injunctive relief, as damages are the only relief
> specifically requested in her fifth cause of action. Compl., ¶ 54. Thus, monetary
> damages are central to her defamation claim. Regardless of whether Plaintiff
> seeks injunctive relief for her defamation claim, she was still required to comply
> with the CGCA because her monetary relief claims were more than incidental.

17  <u>Robinson</u>, 875 F. Supp. 2d at 1045.  Further, like the <u>Robinson</u> court, the Court would find an

18  attempt to replead the state law damages claims as requests only for equitable relief improper, as

19  there was an adequate monetary remedy at law available:

> There are exceptions to the government claim filing requirement. The filing
> requirement does not apply to either non-pecuniary actions such as injunctive,

---

[8]  Plaintiff brought four state law claims: the second cause of action for violation of Article 1 of California
Constitution (SAC ¶¶ 62-65); the third cause of action for negligence (SAC ¶¶ 66-74); the fourth Cause of action for
false imprisonment (SAC ¶¶ 75-81); and the sixth cause of action for vicarious liability (SAC ¶¶ 87-89).  The Sixth
cause of action for vicarious liability is the only cause of action that specifically states it is seeking declaratory
relief, and also specifically states it is not seeking compensatory or punitive damages.  (SAC ¶ 89.)  The sixth cause
of action was only brought against County Defendant Dirkse, and thus is not a subject of the CDCR Defendants'
motion to dismiss.  The other causes of action do not specifically reference declaratory relief.  The second and fourth
causes of action state Plaintiff suffered physical, emotional, and pecuniary damages, while the third cause of action
references harm and injury generally.  (SAC ¶¶ 65, 67, 74, 81.)  The general "Relief Requested" portion of the
complaint does request declaratory relief generally as to the entire complaint.  (SAC ¶ 91.)  In the previous findings
and recommendations as to the County Defendants, despite the specific reference to declaratory relief, the Court
recommended dismissing the sixth cause of action completely as inexorably intertwined with the state law tort
claims that were also recommended to be dismissed.  (ECF No. 43 at 50, n.12.)

specific, or declaratory relief, or causes of action based upon federal law . . .

. . . With respect to Plaintiff's third argument, even if Plaintiff's Complaint were amended to include a request for injunctive relief specifically for her defamation claim and to drop any request for damages, the Court finds that she nevertheless is unable to prevail. Plaintiff has proffered no basis to request injunctive relief because an adequate remedy at law exists—monetary damages. The "basic doctrine of equity jurisprudence [provides] that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Therefore, it is futile to grant Plaintiff leave to amend to include a request for injunctive relief because an adequate remedy at law was available.

Robinson, 875 F. Supp. 2d at 1045-46.  Canova, cited in Robinson, is also instructive as to whether repleading a claim only as equitable relief is permissible as an inroad to avoid dismissal for noncompliance with the Claims Act, and whether it would be permissible under the circumstances here:

As explained below, we agree that declaratory or injunctive relief is not available and that mandamus cannot be used to invalidate the Rate Amendment or compel recalculation of the equity adjustment because Plaintiffs had an adequate remedy at law via money damages and they were required to file a timely claim. Mandamus, however, may be appropriate to attempt to invalidate the rollover and compel Defendants to change the retirement plan back to the Pension Plan. This claim is not one for money or damages and did not require the filing of a government claim. Accordingly, summary judgment of the entire action based on Plaintiffs' failure to comply with the Claims Act was improper . . .

. . . Plaintiffs contend the Claims Act did not apply because their action sought mandamus relief, not money or damages. In determining whether the Claims Act applies, the critical question is whether the recovery of money or damages was the primary purpose of Plaintiffs' claims. Where the primary purpose of a mandamus action is monetary relief, the mandatory requirements of the Claims Act apply. [citations] In contrast, mandamus actions seeking to compel performance of a mandatory duty, statutory duty or ministerial act may not be subject to the Claims Act if they do not seek money or damages. [citations] . . .

. . . Although the operative complaint does not directly ask for money or damages, it seeks a transfer of additional funds into the Contribution Plan accounts of each plaintiff. This is a form of monetary relief that would fully compensate Plaintiffs for Defendants' alleged improper modifications and render any equitable relief superfluous. Accordingly, Plaintiffs' claim was one for breach of contract and they cannot avoid the government claim filing requirement by recasting it as one for mandamus . . .

. . . Plaintiffs' allegation that the modifications violated a ministerial duty do not change our conclusion. Even assuming Defendants had such a duty, mandamus is inappropriate where, as here, there is an adequate remedy at law.

1  <u>Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan</u>, 150 Cal. App. 4th 1487,

2  1492-94, 59 Cal. Rptr. 3d 587, 593 (2007).

3        The cases and arguments presented by the CDCR Defendants provide further support for

4  the determination that allowing any repleading of these actions as seeking declaratory relief only

5  would be improper as such declaratory relief would not be seeking any prospective relief, but

6  rather a declaration that a past action was wrong or unconstitutional.  In <u>Gafcon</u>, the court noted

7  "declaratory relief 'operates prospectively, and not merely for the redress of past wrongs, [it]

8  serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights

9  or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice,

10  to declare rights rather than execute them.' "  <u>Gafcon, Inc. v. Ponsor & Assocs.</u>, 98 Cal. App. 4th

11  1388, 1403, 120 Cal. Rptr. 2d 392 (2002) (quoting <u>Babb v. Superior Court</u>, 3 Cal. 3d 841, 848,

12  479 P.2d 379 (1971)).   In <u>Gafcon</u>, plaintiff sought a declaration that the insurer's use of

13  employee attorneys to defend its insureds constituted the unauthorized practice of law; that

14  insurance companies in general improperly exercise control over their employee attorneys so as

15  to interfere with their independence and professional judgment in representing insureds; that

16  defendant insurer operated under a conflict of interest in this case; and that insurance companies

17  derive an illegal profit from use of in-house counsel in representing insureds.  <u>Gafcon</u>, 98 Cal.

18  App. 4th at 1396.  The court found that "[w]hen Ponsor was relieved as Gafcon's counsel, any

19  harm occurring to Gafcon resulting from Ponsor's purported inadequate representation or

20  assistance to Travelers ended," and held that "[b]ecause declaratory relief operates prospectively

21  only, rather than to redress past wrongs, Gafcon's remedy as against Ponsor lies in pursuit of a

22  fully matured cause of action for money, if any exists at all."  <u>Gafcon</u>, 98 Cal. App. 4th at 1404.

23        <u>Giraldo</u> involved a claim under the California Constitution, and is relevant given the

24  Court's previous findings and recommendations as to the County Defendants' motion to dismiss

25  the state constitutional claim for failure to exhaust under the Claims Act, as well as the

26  unavailability of monetary damages for such constitutional claim.[9]  As noted in <u>Giraldo</u>, even

27  _____

28  [9]  In issuing the findings and recommendations regarding the County Defendants' motion to dismiss, the Court
recommended dismissing Plaintiff's second cause of action to the extent it sought monetary relief, and not to the
extent it sought declaratory relief.  (ECF No. 43 at 50-52.)  The County Defendants' opening brief for their motion

where there is no private right of action for damages for the constitutional violation, equitable relief may be available where there is an *ongoing* violation of the California Constitution, citing Katzberg:

> Even in the absence of a private right of action for damages, an individual may maintain an action for equitable relief for ongoing violations of the Constitution. (*Katzberg, supra,* 29 Cal.4th at p. 307, 127 Cal.Rptr.2d 482, 58 P.3d 339.) Here, however, after plaintiff was paroled the trial court granted defendants' motion and dismissed plaintiff's claims for injunctive and declaratory relief on the ground these claims had become moot. Plaintiff contends this dismissal was error. Again, we disagree.
>
> An issue becomes moot when some event has occurred which "deprive[s] the controversy of its life." [citation] The policy behind a mootness dismissal is that "courts decide justiciable controversies and will normally not render advisory opinions." [citation] . . .
>
> . . . It is clear that upon plaintiff's parole she was no longer under the physical control of CDCR, and the challenged conduct no longer applied to her. Thus, any injunction or declaratory judgment would not impact her . . .
>
> . . . Plaintiff fails to explain, however, how CDCR's legal, as opposed to physical, custody of her would perpetuate a controversy between her and defendants amenable to judicial resolution. The question was not whether plaintiff remained in CDCR custody, as she argues, but whether there remained a controversy that could be resolved by the court in a manner that would affect her. And unless plaintiff was still in the *physical* custody of CDCR—and subject to the challenged housing policies—her requests for prospective relief could have no impact on her. Put another way, any ruling on plaintiff's equitable claims would have amounted to an advisory opinion, rendering of which "falls within neither the functions nor the jurisdiction of" the court. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 860, 39

to dismiss did not discuss declaratory relief, and focused on the lack of a private right of action for damages under the California Constitution.  (ECF No. 34-1 at 19.)  Plaintiff's opposition highlighted that while damages are foreclosed under the second cause of action, equitable relief may be available, Katzberg v. Regents of the University of California, 29 Cal. 4th 300 (Cal. 2002).  (ECF No. 37 at 10.)  While the County Defendants argued the relief would be speculative and moot in reply briefing, they provided no citation to legal authority stating that such declaratory relief for a California constitutional claim would be foreclosed.  The Court declined to recommend dismissing the declaratory relief aspect of the state constitutional claim as the County Defendants had provided no authority demonstrating necessary dismissal of the second cause of action to the extent it sought declaratory relief.  (ECF No. 43 at 52.)  The Court similarly found dismissal of the equitable relief portion of the second cause of action would not be warranted given the Claims Act did not encompass claims for monetary damages and because the Court's finding that the constitutional claim would survive based on Katzberg and other cases cited in relation to the motion to dismiss for lack of a private right of action for damages.  (ECF No. 43 at 50-52.)

Now, based on all of the authority before the Court and the reasons discussed herein, the undersigned would recommend dismissal of Plaintiff's second cause of action, third cause of action, and fourth cause of action, regardless of whether declaratory relief is sought.  Again, Plaintiff's other state cause of action, the sixth cause of action for vicarious liability, was only raised against Defendant Dirkse, is not part of the CDCR Defendants' motion to dismiss, and the Court previously recommended that cause of action be dismissed completely.  (ECF No. 43 at 50, 59.)

1   Cal.Rptr.2d 21, 890 P.2d 43.)

2   Giraldo v. Dep't of Corr. & Rehab., 168 Cal. App. 4th 231, 257–58, 85 Cal. Rptr. 3d 371, 392

3   (2008). The discussion of McQuillion in Giraldo adds further support:

> Before his section 1983 claim was resolved on appeal, McQuillion prevailed on
> his habeas petition and was released. (*McQuillion, supra,* 369 F.3d at p. 1094.) As
> a result, in the appeal of his section 1983 claim, the Ninth Circuit considered
> whether his "successful habeas petition and subsequent release render[ed] his §
> 1983 action moot." (*Id.* at p. 1095.) And as to the injunctive and declaratory relief
> claims, it concluded that it did, holding that: "McQuillion's release extinguishes
> his legal interest in an injunction because it would have no effect on him." (*Ibid.*)
> "A judicial pronouncement, as it would relate to McQuillion, would be an
> advisory opinion, which the [United States] Constitution prohibits." (*Ibid.*) (See
> also *Preiser v. Newkirk* (1975) 422 U.S. 395, 402–403, 95 S.Ct. 2330, 45 L.Ed.2d
> 272; *Dilley v. Gunn* (9th Cir.1995) 64 F.3d 1365, 1368 ["An inmate's release from
> prison while his claims are pending generally will moot any claims for injunctive
> relief relating to the prison's policies unless the suit has been certified as a class
> action."].)

11  Giraldo, 168 Cal. App. 4th at 258–59 (citing McQuillion v. Schwarzenegger, 369 F.3d 1091,

12  1094 (9th Cir. 2004)). Like Giraldo, there is no ongoing violation that could be remedied by

13  declaratory relief. Unlike Dragasits, there is no remaining aspect, at all, of an ongoing

14  constitutional violation:

> While neither sections 15 nor 17 of the California Constitution support claims for
> money damages, Dragasits also seeks injunctive and declaratory relief. (ECF No.
> 18, at 24.) "Even in the absence of a private right of action for damages, an
> individual may maintain an action for equitable relief for ongoing violations of
> the Constitution." *Giraldo,* 168 Cal. App. 4th at 257; *see also Katzberg,* 29 Cal.
> 4th at 307 ("[L]ike many other constitutional provisions, [article I, section 7(a) ]
> supports an action, brought by a private plaintiff against a proper defendant, for
> declaratory relief or for injunction."). Here Dragasits asserts that defendants
> subjected him to cruel and unusual punishment when they confiscated his
> prescribed orthopedic shoes. (*See* ECF No. 18, at 11, 20, 21.) He has not yet
> received them back, and he asks for their return as injunctive relief. (*Id.* at 40.) He
> also seeks a declaratory judgment regarding the illegality of defendants' actions.
> (*Id.* at 22.) So, while his claims for damages under the California Constitution
> should be dismissed, his claims for any equitable relief should survive. To that
> extent, defendants' motion to dismiss should be denied.

23  Dragasits v. Rucker, No. 18-CV-0512-WQH-AGS, 2020 WL 264519, at *5 (S.D. Cal. Jan. 17,

24  2020), report and recommendation adopted, No. 318CV00512WQHAGS, 2020 WL 805090

25  (S.D. Cal. Feb. 13, 2020).

26      While Plaintiff cites Weimer, for the proposition that he should be allowed to amend all

27  of his state law claims to plead only declaratory relief, Defendants correctly highlight that case

involved declaratory relief under state law for prospective name-clearing relief based on an allegation he had been wrongfully convicted of child molestation.  Weimer v. Cty. of Kern, No. 1:06-CV-00735OWWDLB, 2006 WL 3834237, at *9 (E.D. Cal. Dec. 28, 2006) (while plaintiff conceded damages were not available under provision of the California Constitution, plaintiff requested "that he be permitted to re-plead his claims as requests for declaratory 'name clearing' relief[,] and [a]ccordingly, Plaintiff's prayers for damages in connection with his claims under the California Constitution are STRICKEN [and] may be re-pled as claims for declaratory relief only in an amendment to the complaint.").

Accordingly, for the reasons discussed above, the Court recommends granting the CDCR Defendants' motion to dismiss Plaintiff's second, third, and fourth causes of action for failure to comply with the California Government Claims Act.  See, e.g., Le Mere, 35 Cal.App. 5th at 246; Jadwin, 2009 WL 926844, at *8.  The Court further recommends denying Plaintiff's request to only deny these claims with regard to damages, and recommends denying Plaintiff's alternative request for leave to amend the complaint to plead only declaratory relief for the state law tort claims.  See Robinson, 875 F. Supp. 2d at 1045-46; Gafcon, 98 Cal. App. 4th at 1403; Canova, 150 Cal. App. 4th at 1492-94; Giraldo, 168 Cal. App. 4th at 257–58; Dragasits, 2020 WL 264519, at *5; Weimer, 2006 WL 3834237, at *9.[10]

### D.    Parole Status and Legal Custody of the CDCR

Defendants move for dismissal of each of Plaintiff's claims against the CDCR Defendants on the basis that Plaintiff was legally in the custody of CDCR due to his release on parole.  (Mot. 8-10.)

#### 1.    The Parties' Arguments

CDCR Defendants argue that Plaintiff was not entitled to be released upon pronouncement of his sentence to time served because his sentence included a period of parole that had not been completed, and Plaintiff's complaint admits he was sentenced to six years of

---

[10]  The Court notes that on January 13, 2021, Plaintiff filed a response to the County Defendants' objections to the pending December 18, 2020 findings and recommendations.  (ECF No. 55.)  In the filing, Plaintiff states he is persuaded by the County Defendants' argument that the state-law constitutional claim should be dismissed in its entirety, and now accedes to dismissal of the state-law constitutional claim.  (ECF No. 55 at 10.)

time served, but was to be released to parole (SAC ¶¶ 32-33).   (Mot. 8.)   Specifically, Defendants proffer: (1) the statutory period of parole is separate from the underlying prison sentence and is a part of the punishment for the crime; (2) a person on parole is still in the legal custody of the CDCR; (3) because Plaintiff was "released to parole" he was legally in the custody of CDCR after his plea deal and sentencing; and (4) parole can be served either in physical custody, or out of physical custody and subject to certain conditions, People v. Nuckles, 56 Cal. 4th 601, 608-09 (2013); In re E.J., 47 Cal. 4th 1258, 1283, 223 P.3d 31, 47 (2010); Berman v. Cate, 187 Cal. App. 4th 885, 891–92, 114 Cal. Rptr. 3d 49, 54 (2010).   (Mot. 8-9.) Defendants contend based on this caselaw, Plaintiff was not entitled to be freed or a "free man" on December 13, 2019, as he alleges, because his parole status left him in the custody of CDCR. (Mot. 9.)

Plaintiff first responds that while Defendants argue that because Plaintiff was on parole, the late release did not implicate any liberty interest, Defendants do not cite any cases for this proposition.   Plaintiff contends Defendants' argument is contradicted by Ninth Circuit law, Haggard v. Curry, 631 F.3d 931, 935 (9th Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002); Pearson v. Muntz, 639 F.3d 1185, 1190–91 (9th Cir. 2011).   Indeed, Plaintiff states that the "CDCR Defendants' argument borders on the sanctionable, because *this party* has had *this argument* rejected by the Ninth. Circuit."   (Opp'n. 12, citing Laucella v. Sisto, 433 F. App'x 545, 546 (9th Cir. 2011).)

Second, Plaintiff argues the Court already rejected this argument in the findings and recommendations already issued, when the Court stated it was "not persuaded that CDCR having constructive custody of Plaintiff under the California penal code would absolve Defendants Mendez and Sousa of liability here for a constitutional violation."   (ECF No. 43 at 29.)   Third, that Defendants' argument there was no duty to release the Plaintiff ignores the fact they received an order from a judge directing them to release Plaintiff.   (Opp'n 13, citing, e.g., Milliken v. City of S. Pasadena, 96 Cal. App. 3d 834, 158 Cal. Rptr. 409 (Ct. App. 1979) ("The central theme of the above authorities is that the peace officer must *obey the order of the court*.") (emphasis in original).)   Fourth, Plaintiff argues courts have not held that a plaintiff's parole

status is a bar to overdetention claims.

CDCR Defendants did not provide any response to Plaintiff's arguments raised in opposition regarding this aspect of the CDCR Defendants' motion to dismiss.  (See Reply 1-10.)

### 2.    The Court Recommends Denying Defendants' Motion to Dismiss

While it appears Plaintiff characterizes the Defendants' arguments somewhat more extremely than perhaps presented, and Plaintiff's arguments made in opposition are somewhat misdirected,[11] the Court agrees with Plaintiff that the CDCR's motion to dismiss on this ground is unsupported and recommends the Court deny this aspect of the motion to dismiss.

The cases cited by Defendant do not convince the Court that Plaintiff was not deprived of a liberty interest simply because parole may be served in physical custody or out of physical custody.  Defendants have cited no caselaw or authority for why such fact equates to Plaintiff not

---

[11]  As for Plaintiff's second argument, the Court does not find Plaintiff's reference to the Court's findings and recommendations regarding the County Defendants applicable here.  There, the County Defendants were arguing they were absolved of liability because the CDCR retained constructive custody of Plaintiff during the time he was in physical custody of the county jail.  (See ECF No. 43 at 29-30 ("Although the interactions with CDCR may allow a jury to weigh the reasonableness of the Defendants' actions, the Court is not persuaded that CDCR having constructive custody of Plaintiff under the California penal code would absolve Defendants Mendez and Sousa of liability here for a constitutional violation.  Aside from the penal code, Defendants cite no authority to the Court for the proposition that the retention of constructive custody by the CDCR would absolve members of the Stanislaus County jail of Section 1983 liability when Plaintiff was in the actual physical custody of the Stanislaus County Jail.").  Here, CDCR Defendants are arguing that being on parole equates to still being in the legal custody of the CDCR, and parole can either be served in or out of physical custody.  The Court finds Plaintiff's comparison inapplicable.  As for Plaintiff's fourth argument, the Court does not find the cases particularly on point or persuasive, and it appears they were simply readily accessible as Plaintiff's counsel was also counsel on these cases.  Plaintiff proffers Hicks for the proposition that the court affirmed a denial of qualified immunity to a prison employee in an overdetention case even though the plaintiff was on parole, however, the parole status was only mentioned once when summarizing the background factual information that he was arrested for a parole violation, and then alleges to have been over-detained after that.  See Hicks v. LeBlanc, No. 20-30125, 2020 WL 6164338, at *1 (5th Cir. Oct. 21, 2020) ("Hicks was arrested in Louisiana for a parole violation, stemming from a conviction in Arkansas for which he served 455 days in Arkansas' Faulkner County Jail.  On January 3, 2017, after 163 days of pretrial detention, Hicks pled guilty to the violation in the Second Judicial District of Louisiana, which sentenced him to four years of hard labor and gave him credit for time served in Arkansas.  Hicks served his sentence at the Claiborne Parish Detention Center [and] alleged that he should have been released on February 24, 2018.").  In Thomas, the only mention of parole is that the plaintiff was released from incarceration and into parole, and then released from parole supervision after approximately one month.  See Thomas v. Gryder, No. CV 17-1595-EWD, 2019 WL 5790351, at *1, 4 (M.D. La. Nov. 6, 2019) ("Plaintiff alleges he was illegally imprisoned for 589 days past the end of his actual sentence due to the acts of Sally Gryder, an employee in the Records Department at the David Wade Correctional Center ("DWCC") for the Louisiana Department of Corrections (the "DOC").  Plaintiff alleges that while the DOC originally calculated his release date correctly as June 5, 2015, Ms. Gryder thereafter concluded that the June 5, 2015 date was incorrect based on a discrepancy between the Bill of Information and the state court's Sentencing Order, and informed Plaintiff that he would not be released until February 28, 2017 . . . Plaintiff was released from DWCC on January 13, 2017 and spent approximately one month on parole before being released from supervision.").  Neither of these cases provide much authority or analysis of the issue of parole raised by the CDCR Defendants here.

1   having a constitutional right to be released from physical custody on parole when a court orders

2   such release.  Defendants' cases only stand for the proposition that parole is still a form of legal

3   restraint on freedom, and thus still a form of constructive custody.  See Nuckles, 56 Cal. 4th at

4   609–10 ("[A] convicted felon released on parole is subject to substantial restraints on his liberty

5   and is deemed to remain in the constructive custody of the Department of Corrections and

6   Rehabilitation . . . As the United States Supreme Court has explained: 'A California inmate may

7   serve his parole period either in physical custody, or elect to complete his sentence out of

8   physical custody and subject to certain conditions. [Citation.] Under the latter option, an inmate-

9   turned-parolee remains in the legal custody of the [former] California Department of Corrections

10  through the remainder of his term [citation], and must comply with all of the terms and

11  conditions of parole, including mandatory drug tests, restrictions on association with felons or

12  gang members, and mandatory meetings with parole officers.' ") (alterations in original) (quoting

13  Samson v. California, 547 U.S. 843, 851, 126 S. Ct. 2193, 2199, 165 L. Ed. 2d 250 (2006)); In re

14  E.J., 47 Cal. 4th at 1283 ("It bears observing that a parole term is a component of the inmate's

15  original sentence, and that parolees remain in the constructive custody of CDCR for the duration

16  of their fixed parole terms and are not formally 'discharged' from the department's custody until

17  the expiration of the parole term."); Berman, 187 Cal. App. 4th at 891–92 ("Habeas corpus is the

18  process guaranteed by both the federal and California Constitutions to obtain prompt judicial

19  release from illegal restraint . . . A parolee remains constructively imprisoned since he is not free

20  from legal restraint by the authorities; habeas corpus is the appropriate method for challenging

21  the legality of that restraint.") (citations omitted).

22        On the other hand, the cases cited by Plaintiff demonstrate there is a protected liberty

23  interest in parole in California, and specifically an expectation of *release* on parole.  McQuillion,

24  306 F.3d at 901 ("McQuillion qualifies for habeas relief on due process grounds only if the State

25  has infringed a liberty interest that has been 'clearly established' by the Supreme Court . . . We

26  therefore hold that 'clearly established Federal law, as determined by the Supreme Court of the

27  United States' provides that California prisoners like McQuillion have a cognizable liberty

28  interest in *release* on parole.") (emphasis added); Swarthout v. Cooke, 562 U.S. 216, 219–20

1  (2011) ("As for the Due Process Clause, standard analysis under that provision proceeds in two

2  steps: We first ask whether there exists a liberty or property interest of which a person has been

3  deprived, and if so we ask whether the procedures followed by the State were constitutionally

4  sufficient.  [citations]  Here, the Ninth Circuit held that California law creates a liberty interest in

5  parole . . . While we have no need to review that holding here, it is a reasonable application of

6  our cases . . . Whatever liberty interest exists is, of course, a *state* interest created by California

7  law.  There is no right under the Federal Constitution to be conditionally released before the

8  expiration of a valid sentence, and the States are under no duty to offer parole to their

9  prisoners.") (citations omitted) (emphasis in original); Pearson, 639 F.3d at 1190–91 ("*Cooke* did

10 not disturb our precedent that "California law creates a liberty interest in parole."); Haggard, 631

11 F.3d at 935 ("[A] state parole statute may create an 'expectancy of release' on parole that 'is

12 entitled to some measure of constitutional protection,'  [citation]  In other words, it is possible

13 for an inmate to have a constitutionally protected liberty interest in parole, but only to the extent

14 that state law creates that interest. [citation] Moreover, the state law giving rise to that liberty

15 interest not only creates the interest but also defines its scope and prescribes its limits."); 

16 Laucella, 433 F. App'x at 546 ("We therefore reject the State's argument that this court lacks

17 subject matter jurisdiction because Laucella does not have a federally protected liberty interest in

18 parole.").

19      Accordingly, the Court recommends denying the CDCR Defendants' motion to dismiss

20 brought on the basis that Plaintiff was legally in the custody of CDCR due to his release on

21 parole.

22      **E.    Leave to Amend**

23      CDCR Defendants request Plaintiff's complaint be dismissed without leave to amend.

24 (Mot. 11.)  As an alternative to dismissal, Plaintiff requests leave to amend the complaint to

25 plead only declaratory relief for the state law tort claims, Weimer v. Cty. of Kern, No. 1:06-CV-

26 00735OWWDLB, 2006 WL 3834237, at *9 (E.D. Cal. Dec. 28, 2006).  (Opp'n 14.)

27      Courts freely grant leave to amend a complaint which has been dismissed.  See Fed. R.

28 Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Schreiber

Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (same).

In the findings and recommendations currently pending as to the County Defendants' motion to dismiss, despite noting that it did not appear that Plaintiff could cure the defect, the Court recommended granting leave to Plaintiff to the extent he could plead compliance with the California Government Claims Act prior to the filing of this action. (ECF No. 43 at 50, 58.)  In Plaintiff's opposition here to the CDCR Defendants' motion to dismiss, Plaintiff has essentially conceded that these defects are not curable in this regard, requesting the claims survive only to the extent they plead only declaratory relief, or alternatively requesting leave to plead only as actions for declaratory relief. (Opp'n 14.)  Accordingly, and for the reasons explained above, supra, Section III(C), the Court would recommend denying leave to amend the state causes of action, and specifically deny Plaintiff's request for leave to plead only declaratory relief for the state law claims.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the motion to dismiss filed by Defendants Rhona Delacruz, Joseph Guerrero, Tania Brown, Brandy Smith, Elijah Pruitt, and Nichelle Harrington, be GRANTED IN PART AND DENIED IN PART as follows:

1.   Defendants' motion to dismiss Plaintiff's first cause of action for failure to state a cognizable claim under 42 U.S.C. § 1983 be DENIED;

2.   Defendants' motion to dismiss based on qualified immunity be DENIED;

3.   Defendants' motion to dismiss Plaintiff's second cause of action for violation of the California Constitution, third cause of action for negligence, and fourth cause of action for false imprisonment be GRANTED without leave to amend; and

4.   Defendants' motion to dismiss Plaintiff's complaint due to Plaintiff remaining within CDCR's legal custody on parole be DENIED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 15, 2021**

UNITED STATES MAGISTRATE JUDGE